IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-cv-1570-RBJ-MJW

EVAN BARK,

    Plaintiff,

v.

Detective MARK CHACON, Colorado Springs Police Department (in his personal capacity),
Sergeant DALE FOX, Colorado Springs Police Department (in his personal capacity),
Sergeant MIKE FREEMAN, Colorado Springs Police Department (in his personal capacity),
Sergeant JOSHUA BENNER, Colorado Springs Police Department (in his personal capacity),
Officer FELIX JULIANO, Colorado Springs Police Department (in his personal capacity),
Officer DANIEL MORK, Colorado Springs Police Department (in his personal capacity),
Officer CHRISTOPHER LAABS, Colorado Springs Police Department (in his personal capacity),
ANDREW HOLMES, Deputy Sheriff, El Paso County Sheriff's Office (in his personal capacity),
The City of Colorado Springs, Colorado, a municipality; and
El Paso County, Colorado,

    Defendants.

## ORDER

This matter is before the Court on motions for summary judgment filed on behalf of Det. Mark Chacon [Doc. #42], Deputy Andrew Holmes [#46], and the other individual defendants [#56]. The Court has considered the motions, plaintiff's response [#62] and the defendants' replies [##63 and 64].

**Facts**

On December 30, 2009 officers from the Colorado Springs Police Department were dispatched to C&D Cuts and Styles in Colorado Springs, Colorado to investigate an armed

robbery. According to witnesses, the robbers were two African-American males in their early twenties.

Two women who were in the store when the robbery occurred thought that they spotted the vehicle in which the robbers fled and gave pursuit.[1] They managed to obtain the vehicle's license plate and provided that information to the police. The police traced the plate to Evan Bark. At least ten law enforcement officers converged on Mr. Bark's residence. An attempt to contact the inhabitants by telephone was unsuccessful.

<u>Mr. Bark's testimony</u>

Mr. Bark was aroused at about 1:00 to 1:30 a.m. by banging on the door, opened the door, and saw five or six police officers with flashlights and guns drawn. He was ordered to get out of the house. Thinking that someone had broken into his house and the police were there for that reason, he ran out. He testified that he turned around and saw "a whole bunch of them go inside." Then, "somebody hit me on the back of my knee which dropped me to the ground." Bark depo. [#62-2] at 52-53 (I will use CM/ECF page numbers for the deposition testimony rather than the original page numbers in the deposition). That same officer grabbed his wrists, held his hand behind his back, and told him to be quiet. It was a police officer, not a sheriff's deputy, but he does not know who it was. *Id.* at 145-47. He was down on his knees in the snow for approximately 10 minutes.

After officers cleared the house Mr. Bark states that Det. Chacon and another officer in plain clothes took him inside and placed him on his couch. Bark depo. at 61. Mr. Bark recalls that a "sheriff" was present inside the home with a couple of police officers. *Id.* at 62. He says

---

[1] Officer Juliano advised Det. Chacon, and has repeated in his affidavit, that witness Vanessa Calica told him that she saw the robbers get into the car. That plainly is wrong. Ms. Calica told Det. Chacon that she did not see anyone get into the car. Moreover, it has been determined that the car that the two women followed – Mr. Bark's car – was not involved with the robbers or the robbery.

that the two officers (Chacon and presumably Fox) questioned him for perhaps one and one half hours. *Id.* at 159. About half way through they read him his Miranda rights. *Id.* at 69. Mr. Bark says that, at that point, he wanted to call his mother, but they wouldn't let him. *Id.* at 70. He isn't sure whether he waived his Miranda rights. *Id.* at 70. They told him that his car had been identified leaving the robbery, which he knew could not be true, and they lied by telling him that he was caught on surveillance cameras committing the robbery. *Id.* at 68, 91. He doesn't know who told him those things, except that Det. Chacon was one of them. *Id.* at 91-92. Nevertheless, although he says he was crying during the interrogation, he was cooperative and answered all their questions. *Id.* at 66, 77. For much of that time he was not aware that the officers were investigating a robbery. *Id.* at 66-67.

Mr. Bark acknowledges that he gave the officers consent to search his home, including his safe, and his car, but that he did so after "they started threatening me that if I didn't let them search my property . . . [t]hey were going to tow my vehicles and impound them, and it was going to cost me a lot of money to get my vehicles back." *Id.* at 63. He does not know who told him that, but it was not Det. Chacon. *Id.* at 90. He did not give consent because he was trying to be cooperative. *Id.* at 69. Different officers searched the upstairs, the kitchen, and his vehicles. Mr. Bark did sign a written search waiver, although he says that he does not remember doing so. *Id.* at 64-65. He doesn't know who the officers were that conducted the searches. *Id.* at 73.

Mr. Bark testified that he did not know what Officer Benner, Sgt. Fox, Sgt. Freeman, Deputy Holmes, Officer Juliano, Officer Laabs, or Officer Mork did. *Id.* at 88-89. He agreed that, other than what he had said about Det. Chacon, he does not know what any other officer did specifically. *Id.* at 93. He was scared and nervous and did not pay attention to names, facial

features, height or hair or eye color. He can only say that there were two different kinds of uniforms. *Id.* at 160-61.

Mr. Bark states that after the officers left, and he realized that an armed robbery charge carries years in prison, he started having a panic attack. *Id.* at 77. He called his mother, but while he was on the phone with her, two sheriff's deputies, whom he cannot identify, returned with a plastic bag containing his hats, gloves and other things that he didn't know they had taken. *Ibid.* His mother spoke with one of them who "got reamed out" by her. *Id.* at 78. Mr. Bark also called a friend who came over to help him because he was having an emotional breakdown. *Id.* at 82.

### Det. Chacon's testimony

After being briefed by Officer Juliano, and speaking with Ms. Calica, Det. Chacon and Sgt. Fox went to Mr. Bark's address, arriving at about 1:25 a.m. No attempt was made to obtain a search warrant, nor did Det. Chacon consider that they were in hot pursuit of a suspect or that there were exigent circumstances. Chacon depo. [62-1] at 17, 19, 44-46. Det. Chacon and Sgt. Fox met with a number of officers, including Officers Laabs and Juliano and a deputy sheriff, at a staging area near Mr. Bark's home. Det. Chacon recalls that only he and Sgt. Fox were not in uniform. *Id.* at 19-20. Sgt. Fox was taking the lead because of his senior rank. *Id.* at 67.

An unsuccessful attempt was made to make telephone contact with anyone in the house, and the decision was made to attempt contact at the front door. Det. Chacon went to the back of the residence to make sure no one would leave from there. As a result, he did not see what occurred at the front door. *Id.* at 23. When he was advised that everything was ok, he came around to the front and found Mr. Bark kneeling in the sidewalk area. He told Mr. Bark that they were conducting an investigation and wished to speak with him, and he suggested that they go

into the house because of the cold.  Mr. Bark agreed, and at least Bark, Chacon and Sgt. Fox went into the house.  *Id.* at 25-26.

Det. Chacon asked Mr. Bark for consent to search his car, and Mr. Bark several times gave him consent.  Sgt. Fox and Officer Juliano were in the vicinity and might have overheard the conversation.  *Id.* at 28-29.  Mr. Bark also gave him consent for a search of the house, in which at least Det. Chacon, Officer Juliano and Officer Laabs participated, his cell phone and his trailer.  *Id.* at 30, 70.  Mr. Bark signed a written consent form for the search of the car and house.  *Id.* at 38.  Det. Chacon gave Mr. Bark the Miranda advisement within 20 minutes of his first contact with Mr. Bark on the front sidewalk.  Mr. Bark asked whether he could call his mother.  Det. Chacon tried to call her but no one answered.  *Id.* at 34, 37.  Mr. Bark agreed to speak with the officers, at which time he was Mirandized a second time, waived his rights and agreed orally to talk.  *Id.* at 37.

Det. Chacon was the primary questioner, but Sgt. Fox participated at some points.  Det. Chacon told Mr. Bark that they were investigating a robbery and that his vehicle had been observed on surveillance video.  That was not true and was described by Det. Chacon as an investigative technique.  *Id.* at 47.  He denies that any threats were made.  *Id.* at 48.  The questioning lasted approximately one hour.  *Id.* at 71.

No contraband was found, and according to Det. Chacon, nothing was removed from the home.  *Id.* at 32.  Mr. Bark consistently maintained his innocence, but he was not cleared as a suspect until January 4, 2010.  He was cleared after one of the eye witnesses, Tracy Stanbach, told Det. Chacon that she did not believe the car the two women followed was the robbers' vehicle, because it did not have tinted windows, and there was a white male in the car.  *Id.* at 48-

51. The record contains no indication that either the Colorado Springs Police Department or the El Paso County Sheriff's Office ever apologized to Mr. Bark.

Lawsuit

Mr. Bark understandably was not happy with the manner in which he had been accused and treated. He filed a complaint under 42 U.S.C. § 1983, claiming that his constitutional rights under the Fourth, Fifth and Fourteenth Amendments had been violated. Initially he named Det. Chacon, a number of John Does, the City of Colorado Springs, and El Paso County as defendants. Later, in an Amended Complaint, he substituted Sgt. Fox, Sgt. Mike Freeman, Sgt. Joshua Benner, Officer Felix Juliano, Officer Daniel Mork, and Officer Christopher Laabs, all of the Colorado Springs Police Department, and Deputy Andrew Holmes of the El Paso County Sheriff's Office, for the John Does. Each of the eight individual defendants is sued solely in his personal capacity.

The "City Defendants," comprised of the City of Colorado Springs and the six officers from the Colorado Springs Police Department other than Det. Chacon, moved to dismiss the complaint. The City contended that Mr. Bark had not adequately alleged a department-wide custom or practice that allowed the allegedly wrongful acts of the individual officer or that the City had acted with deliberate indifference in its police training practices. With respect to the individual officers, the motion contended that the plaintiff had failed to allege any facts as to the specific actions of any of them. The County Defendants, being El Paso County and Deputy Holmes, filed a similar motion to dismiss.

On May 18, 2011 the Court, by Chief Judge Daniel, granted the motion to dismiss the City of Colorado Springs and El Paso County. The Court noted that in order to establish municipal liability under § 1983, the plaintiff would have to show (1) the existence of a

municipal policy or custom, and (2) a direct causal link between the policy or custom and the injury alleged. *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 689-90 (1978). A municipality could be liable for a failure to train if its failure evidenced a "deliberate indifference" to the rights of its inhabitants. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). However, the Court agreed with the defendants that plaintiff's allegations were inadequate to state a claim based on a failure to train or otherwise. [#44] at 7-9.

The Court came out differently with respect to the individual defendants. The Court noted plaintiff's allegation that he was not personally acquainted with any of them; that he could not identify which defendant did what; but that all of the individual defendants were present and participated in the events described in the Amended Complaint. *Id.* at 9. Nevertheless, the Court concluded:

> While Plaintiff has not alleged which specific Defendant committed which specific act during the incident in question, it would be unfair to require Plaintiff to do so based on the circumstances alleged in this case. Here, I find that the allegations in the Amended Complaint provide sufficient notice to the individual Defendants of the claims asserted against them and the grounds upon which those claims rest.

*Id.* at 11.

These individual defendants, joined by Det. Chacon this time, now request an order of summary judgment dismissing the claims against them.

### **Standard**

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A

fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### Conclusions

#### Qualified Immunity

All defendants, as is common in such cases assert the claims against them are barred by the doctrine of qualified immunity. This doctrine "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Toevs v. Reid*, 646 F.3d 752, 755 (10th Cir. 2011) (internal citations omitted). To overcome summary judgment based on qualified immunity, the plaintiff "must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Steffey v. Orman,* 461 F.3d 1218, 1221 (10th Cir. 2006). A right is clearly established if it would have been "clear to a reasonable officer that his conduct was unlawful under the circumstances presented." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

#### Individual Defendants other than Det. Chacon [##46 and 56]

The Colorado Springs Police Department offices other than Det. Chacon, together with Sheriff's Deputy Holmes, argue that it cannot be established that any of them violated Mr. Bark's constitutional rights, because he cannot identify who did what, and no other evidence of any of these individuals has been developed. Unfortunately, because I believe that Mr. Bark was treated poorly unnecessarily, I agree.

Many cases hold that a constitutional violation can be established only if it can be shown that an individual officer personally participated in the violating conduct. *See, e.g., Porro v. Barnes,* 624 F.3d 1322, 1327 (10th Cir. 2010); *Novitsky v. City of Aurora,* 491 F.3d 1244, 1254 (10th Cir. 2007). *Cf. Jenkins v. Wood,* 81 F.3d 988, 994-96 (10th Cir. 1996). None of these cases involve facts quite like the present facts. Nevertheless, the basic proposition is valid.

A closer case is *Lynch v. Barrett,* No. 09CV405, which appears at 2010 WL 3938359 (D. Colo. Oct. 5, 2010). In that case the plaintiff was arrested by several police officers and claimed that one or more of them used excessive force in cuffing him and by hitting and kicking him. None of the officers disclosed which officer did what. The plaintiff brought two claims, one asserting that the use of excessive force violated his Fourth Amendment rights and the other asserting that by preventing him from obtaining valuable information concerning the excessive force claim, the officers were denying his right of access to the courts.

The court dismissed the second claim without prejudice as premature. However, the court denied defendants' motion for summary judgment regarding the first claim. The court found that a jury could infer that defendants had an opportunity to intervene and failed to do so, and that it could also infer, based on credibility determinations and weighing of the evidence, that individual defendants either participated in the excessive force or witnessed it but did not intervene. *Id.* at *4, 5.

I could follow the lead of my colleague Judge Kane and deny the pending motion. However, to me that would be irresponsible on the present facts and would impose on all these parties the expense of a trial with no realistic chance that Mr. Bark could recover. Here, Mr. Bark admits that he has no idea what any officer other than Det. Chacon did. Someone allegedly knocked him down in front of his house, but he does not know who. He argues that he gave consent to search his house, car, trailer and cell phone under duress, but admits he does not know who threatened him. He complains about the questioning, but that was done primarily by Det. Chacon, and Mr. Bark has no specific complaint against Sgt. Fox who apparently participated off and on. He has not asserted, nor certainly has he provided evidence, that any particular individual officer witnessed an improper action, was in a position to intervene and stop it, but did not. He has not alleged that any particular officer is covering up another's wrongdoing.

As indicated above, I am also aware that my colleague, Chief Judge Daniel, denied these defendants motion to dismiss which was based on the same theory. The difference is that was simply a motion for failure to state a claim. It was unknown then whether plaintiff had or could develop evidence, through investigation or discovery, that might link specific wrongful acts to a particular individual. The issue before the Court now is whether plaintiff has come forward with facts that show that there is a genuine dispute of material fact regarding the allegedly wrongful actions of any of these officers. The Court finds that he has not.

Moreover, without knowing what any of the individuals did, it would be impossible to assess whether a reasonable police officer or sheriff's deputy would know that the conduct was unlawful, i.e., the second prong of the qualified immunity doctrine. I might be willing to say that knocking Mr. Bark to his knees in the snow, without necessity or provocation, might be determined by a reasonable jury to be improper. However, with no ability to attribute that

conduct to any named defendant, other than Mr. Bark's testimony that it was a police officer and not a sheriff's deputy, or even to know for sure that each of the defendants was present when this occurred, a reasonable jury could not attach liability to any of them.

The record before me does not contain deposition testimony from anyone other than Mr. Bark and Det. Chacon. It does not contain police reports that might shed some light on the matter. I noticed that a number of questions were posed to Det. Chacon in his deposition about what individual officers did, and for the most part he proclaimed ignorance. He certainly did not attribute misconduct to any other officer.

Therefore, as unsatisfying as it might be, even to me, I have to find that there is no evidence of a material and genuine dispute regarding possible wrongdoing by any of the individual defendants other than Det. Chacon. I have reached this conclusion after careful study of the entire file. Therefore, these motions are GRANTED.

**Det. Mark Chacon [#42].**

As Judge Gorsuch observed in *Porro v. Barnes,* "[o]ur first task in any § 1983 suit alleging a constitutional violation is 'to isolate the precise constitutional violation with which [the defendant] is charged.'" *Id.* at 1325 (citation omitted). Neither the Complaint nor the brief in opposition to the pending motion clearly articulate what violations are claimed. The Complaint simply claims violations of the Fourth, Fifth and Fourteenth Amendments and then lists a number of alleged wrongs that might support those constitutional claims. The response brief is also unclear.

Giving plaintiff the benefit of the doubt, it appears from the Complaint that, at that time, plaintiff might have been alleging that Det. Chacon (1) violated Mr. Bark's Fourth Amendment right to be secure against an unreasonable search by not obtaining a search warrant, not having

exigent circumstances, and instead threatening and misleading him into granting consent to search his residence, vehicles and cell phone, (2) violated his Fourth Amendment right to be secure against an unreasonable seizure by using excessive force, specifically, making him kneel in the snow, and by detaining him on his couch for three hours of questioning; (3) violated his Fifth and Fourteenth Amendment rights to due process by lying to him about his having been identified by eye witnesses and about his car being caught on a surveillance tape; (4) violated his Fifth Amendment right not to incriminate himself by questioning him for three hours without providing access to counsel, lying to him and attempting to get him to confess; and (5) removing items from his house without his consent.

Search.  Mr. Bark testified that someone told him that if he did not consent to a search, his vehicle would be impounded.  Implicitly, he granted consent based on duress or misrepresentation.  However, Mr. Bark testified that Det. Chacon is not the one who did this.  The evidence from Det. Chacon is that he obtained a written consent.  There is no evidence of which the Court is aware that Det. Chacon did this by misrepresentation or lying.

Seizure, Excessive Force.  There is no evidence that Det. Chacon was present in the front of the house when Mr. Bark was forced to his knees and pat searched.  There is also no evidence that Det. Chacon compelled Mr. Bark to submit to three hours of questioning.  Although Mr. Bark's original estimate was in the two to three hour range, he revised that after his counsel pointed out during the deposition that it was probably in the one and one half hour range.  More importantly, the evidence is that he was cooperative and answered all the questions.  The Fourth Amendment permits "an arrest or investigatory stop" with the "right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Here the detention was minimal.  He sat on his own couch, without handcuffs or other restraint.

The Court finds that the detention described in the record of this case did not violate Mr. Bark's Constitutional rights by detaining him on his couch.

<u>Lying</u>.  Mr. Bark alleges that Det. Chacon, in an effort to elicit a confession, out and out lied to Mr. Bark about the supposed eye witnesses and the surveillance tape.  This, according to Det. Chacon, is a technique called "strategic deception."  I have seen this tactic used many times in my thirteen and a half years as a judge.  Judges sitting in chambers are probably not well qualified to comment about what happens on the street.  Nevertheless, I didn't like dishonesty the first time I came across it, and I don't like it today.

Regardless of my personal view, however, "ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990).  Statements such as Det. Chacon's do not amount to coercion.  Nor was any harm caused by Det. Chacon's tactic.  Mr. Bark knew he was innocent.  He did not confess, nor were any of his statements used against him.  Therefore, Det. Chacon's statements do not constitute a violation of Mr. Bark's rights.

<u>Self-incrimination</u>.  The Fifth Amendment, applicable to the states through the Fourteenth Amendment, requires that "no person…shall be compelled in any criminal case to be a witness against himself." *Chavez v. Martinez*, 538 U.S. 760, 766 (2003).  Although the Supreme Court declined to define the precise moment a criminal case begins, the Court did state that "it is enough to say that police questioning does not constitute a 'case.'" *Id.* at 767.  It is not until a statement compelled by police interrogation is used at trial that a violation of the Self-Incrimination Clause occurs. *Id.*

Mr. Bark was never made to testify against his own interests in violation of the Fifth Amendment's Self-Incrimination Clause.  In fact, Mr. Bark was never criminally charged or

even arrested. He was read his Miranda rights and agreed to speak with Det. Chacon. Even if Mr. Bark's speech was the result of intimidation, the "mere use of compulsive questioning, without more, [does not violate] the Constitution." *Id.* Therefore, the Court finds that there is no genuine issue of material fact that requires trial concerning whether Det. Chacon violated Mr. Bark's right not to testify against himself.

<u>Removal of items from the home.</u> There is no evidence that Det. Chacon removed any items from the house. He adamantly denied it, and Mr. Bark's testimony was that sheriff's deputies, not police officers, returned certain items to him later in the morning of December 31, 2009.

In summary, the Court concludes that plaintiff has not shown that there is a genuine dispute of fact regarding any of the constitutional violations attributed to Det. Chacon. Nor has the plaintiff shown that Det. Chacon violated a clearly established right that a reasonable officer would have known was unlawful. The problem with this case, as I see it, is that Det. Chacon is the one individual whom plaintiff can identify, but he does not have evidence that creates a triable issue of fact regarding Det. Chacon's actions. There might have been improper conduct by others, but they haven't been, and apparently cannot be, identified.

**Order**

For the foregoing reasons, the Court orders that

1. Motion #42 is GRANTED.
2. Motion # 46 is GRANTED.
3. Motion # 56 is GRANTED.
4. This civil action and all claims therein are dismissed with prejudice, each party to bear his or its own costs and attorney's fees.

DATED this 30th day of March, 2012.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge